# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DKD ELECTRIC COMPANY, INC.,

        Plaintiff,

FEDERATED SERVICE INSURANCE COMPANY,

        Plaintiff-in-Intervention,

v.                                                     No. CIV 97-1026 BB/LFG

ALLIED TUBE AND CONDUIT, INC.,

        Defendant.

## MEMORANDUM OPINION
## AND
## ORDER ALLOWING AMENDMENT OF JUDGMENT

THIS MATTER comes before the Court on *(1) Plaintiff's Motion to Amend the Judgment, (2) Plaintiff's Petition for Attorneys' Fees and Expenses, (3) Defendant's renewal of its Rule 50 motion for judgment as a matter of law*, and *(4) Defendant's Motions for New Trial #1, #2, and #3.* The Court having reviewed the briefs, and heard the oral arguments of counsel on May 20, 1999, and being otherwise informed, FINDS (1) the judgment must be amended to delete the award under the Unfair Practices Act; (2) no attorneys' fees may be awarded under the amended judgment, and based on the overall award, the Court will decline to award prejudgment interest;

(3) Defendant's Rule 50 motion will be granted as to the Unfair Practices Act; and (4) Defendant's motions for new trial will be denied.

## Discussion

### I. Plaintiffs' Motion to Revise Judgment

#### A. Unfair Practices Act

At the end of Plaintiffs' case and again at the conclusion of all the evidence, Defendant moved for a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, arguing, *inter alia*, the evidence was insufficient to submit Plaintiffs' claim for violation of the New Mexico Unfair Practices Act, § 57-12-1 *et seq.*, NMSA 1978 (1994 Repl. Pamp.). The Court expressed misgivings as to whether the evidence was sufficient to sustain a verdict but took the issue under advisement. The jury returned a verdict awarding Plaintiffs $1,532,870.00 in compensatory and $1,500,000.00 in punitive damages under their breach of warranty claims. Additionally, the jury awarded Plaintiffs $252,000.00 on their Unfair Practices Act ("UPA") claim.

On February 24, 1999, Plaintiffs moved to amend the judgment by deleting the monetary award under the UPA but requesting an award of attorneys' fees under that Act and for granting pre- and post-judgment interest. Defendant concurs that Plaintiffs must elect to recover under the judgment only for the breach of warranty or the UPA violation, but not both. Defendant argues that once Plaintiffs elected the warranty

award, the request for attorneys' fees under the UPA became moot since the UPA portion of the judgment no longer existed. At oral argument on the post-trial motions, supplemented by later briefing, Defendant also renewed its Rule 50 motion again maintaining that there was insufficient evidence to sustain a verdict under the UPA.

All parties are in agreement that the judgment on the jury verdict awarding compensatory and punitive damages on the warranty claims, as well as damages under the UPA, is not supportable under New Mexico law. Plaintiffs, however, argue that under *Garcia v. Coffman*, 946 P.2d 216 (N.M. App. 1997), they may elect their warranty remedy but retain the right to attorneys' fees under the UPA. While the *Garcia* decision appears to support this contention, after reviewing the trial transcript the Court is convinced Defendant's Rule 50 motion should have been granted and the UPA claim was erroneously submitted to the jury.

Plaintiffs set forth two distinct bases for their UPA claim. Plaintiffs recognize that "one of their UPA claims was also based on breach of warranty. The only difference between the general warranty claims and the UPA warranty claims was that Allied had to act 'knowingly' in its conduct." Pltfs' Resp. in Opp'n to Rule 50 at 4, n. 1. Plaintiffs argue this knowledge is supplied by the following interpretation of the evidence.

> It is clear from the record that Allied knew it was manufacturing defective product, but each day took a calculated risk that a customer would not discover the defects or would not complain. The fact that Allied knew is shown by Mr. Strenk's statement that Allied does not view ["Underwriter's Laboratory"] UL as a part of the real world, by its own customer complaint

3

> investigation reports, by the fact that Allied would not even send someone to "investigate" that knew anything about UL or ["American National Standards Institute"] ANSI specifications or Allied's internal specifications, allowing Mr. Moriarty to blindly opine that the conduit was within Allied's manufacturing tolerances, and by the fact that Allied refused to even measure the seams of the defective conduit to determine whether they were within Allied's manufacturing tolerances. ... According to Mr. Florek, Allied's Quality Assurance Manager, UL 797 is important to Allied for marketing reasons. Tr. at 801-802, Exhibit E hereto. However, as Allied's vice-president James Strenk admits, Allied does not view UL 797 as part of the real world.

Pltfs' Resp. at 12.

When the transcript references cited by Plaintiffs to support these conclusions are reviewed, and certainly when the whole record is considered, a different conclusion develops. The testimony cited for Mr. Florek is, in fact, deposition testimony of another Allied employee, Brian Muick. While Mr. Muick does agree with the suggestion of Plaintiffs' counsel that UL listing is important in marketing the product, he basically said that it is important for Defendant's products to comply with UL safety standards so the product can be listed by UL as approved by that organization.[1] Plaintiffs'

---

[1] The transcript reference relied upon by Plaintiffs follows:

    Q. Well, why is Underwriters Laboratory compliance important to you?

    A. UL?

    Q. Yes. UL specs. Why is it important for you to comply with them?

    A. The product is listed with UL under product safety.

    Q. What does "listed" mean to you?

(continued...)

characterization of Mr. Strenk's testimony that Defendant did not regard the UL listing as "the real world" also came across differently at trial and does again even on the cold transcript – when read in context.[2] In any event, the "real world" quote, which is the

---

[1](...continued)

    A.    It carries a UL mark.

    Q.    And that mark is a mark of approval in effect. Isn't it?

    A.    Correct.

    Q.    It's important in marketing your product; is that correct?

    A.    Correct.

Tr. at 802.

[2]    Q.    They both looked at the conduit?

    A.    Yes, they did.

    Q.    And they were both told to find out if there was a problem?

    A.    Yes.

    Q.    And in that pursuit, did they ever inspect the conduct to determine if it met UL standards?

    . . .

    A.    Would you repeat the question?

    Q.    Did they ever inspect the conduit to determine whether it, in fact, met UL standards?

    A.    I don't know that they did, no.

    Q.    Was that expected?

(continued...)

A. No.

Q. That was not important to you or Dolan?

A. Very important to us, but that's really not the real world. I don't think Intel, DKD, or anyone else knew what UL 797 was, because we don't use that in the real world.

Q. So you were not concerned, because you thought both Intel and TDC were not concerned?

A. I'm concerned about everything that we do. But in regard to 797, that's not the real world, no, sir.

Q. The UL standards and their requirements are not important?

A. Yes.

Q. That's not real world?

A. They are very important.

Q. Well, for example, do you have a copy of the UL 797 handy?

A. With me, no.

. . .

Q. 4.2 says, "Each welded seam shall be without any metal trimmings, sharp edges, and sharp projections."

. . .

A. I can read it, yes, sir.

Q. Do you know if they examined the conduit for that problem?

A. I'm sure they were looking for a sharp seam, yes, sir.

(continued...)

foundation of Plaintiffs' argument, arose during cross-examination of Mr. Muick regarding inspection of the Qwik Fit conduit which had already been removed from the Intel job.

The New Mexico UPA defines an unfair or deceptive trade practice to mean "any false or misleading oral or written statement, visual deception or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods..." The issue on Plaintiffs' second UPA theory is whether Defendant committed an unfair or deceptive trade practice by advertising that its Qwik Fit pipe was listed by UL. Since there is no dispute UL had agreed Qwik Fit met their standards, was it unfair or deceptive for Defendant to not acknowledge publicly that Qwik Fit did not, in fact, comply with the specific UL standard cited.

Statements that UL standards are not part of the "real world" during the investigation of whether Qwik Fit had failed at Intel do not satisfy the "knowingly made in connection with the sale" test under the UPA. While this statement is alleged to be indicative of Defendant's cavalier attitude toward the UL listing, it was not made to DKD

---

[2](...continued)
    Q.     Did they measure the seams?

    A.     I don't know that they did, no.

    Q.     You know they didn't?

    A.     I don't think they did. I say, I don't know that they did, no.

Tr. at 854-56.

before its decision to purchase Qwik Fit and therefore it cannot be persuasive evidence of a "knowingly" deceptive representation. *Russey v. Rankin*, 911 F. Supp. 1449, 1460 (D.N.M. 1995) (statements are "knowingly made" if the issuing party was, or should have been, aware the statements were false or misleading when made).

The Court will next address Plaintiffs' argument in support of their non-warranty UPA claim, *i.e.*, that Defendant's advertising that its products were listed as approved by independent laboratories was deceptive. In reviewing the trial transcript and based upon New Mexico law, the Court must conclude its earlier concerns regarding the applicability of the UPA to these facts were well founded and the judgment granting Plaintiffs' relief under the UPA should be vacated.

Plaintiffs' UPA claim can basically be reduced to the following proposition:

(1) Defendant advertised its Qwik Fit conduit as UL and ANSI listed;[3]

(2) Plaintiffs relied on these representations; and

(3) Even though UL does list Qwik Fit, Defendant doesn't actually meet the specific standards of UL in inspecting its Qwik Fit conduit.

Plaintiffs thus concede that while UL periodically inspects Defendant's products and has actually listed Qwik Fit, it does not fully meet UL standards and should be decertified. For purposes of the UPA claim, then, the issue reduces to whether it is a

---

[3] Plaintiffs' expert on industry standards, Dr. Charles Lee, testified that the UL standard incorporates the ANSI standard, which is much less detailed. (Tr. 500). Therefore, the majority of his testimony focused on the UL standard which will also be referred to herein as including the ANSI specifications.

8

deceptive trade practice to advertise that your product has an industry certification which, in fact, has been, but arguably should not have been, awarded.[4]

---

[4] Plaintiffs' position is set forth in the colloquy which occurred at the close of Plaintiffs' evidence.

> MR. PEIFER (for Plaintiffs): . . .
> Your Honor, this is a knowing representation that Defendants knew to be false. In fact, the deposition testimony read at the end of last week establishing that the Defendants do not do what they represent they do, and that is, they do not inspect this.
>
> THE COURT: How is it they maintain their UL rating?
>
> MR. PEIFER: How do they do that?
>
> THE COURT: Yes, sir.
>
> MR. PEIFER: When the inspector comes, Your Honor, they probably look at it. When the inspector is not there, they don't. That's an inference I draw about the conduct of a third party. But I'm surprised that they can maintain UL listing when they violate it so directly.
>
> THE COURT: I'm not sure where I've heard it, but I understood the UL inspectors make surprise visits and stop in.
>
> MR. PEIFER: Apparently they do, Your Honor. But, I mean, it's only a surprise when they get to the front door. By the time they get back to the plant, I bet everybody knows they are there. And I don't disagree they can argue this to the jury. How can they maintain the listing? Although really the conduct of a third party, UL in this case, is hearsay. I mean, whether UL comes in or not, whether they would accept this violation or not –
>
> THE COURT: It's their standards. If they don't think it's a violation – it would certainly be probative to me whether it's a violation. Maybe they interpret it other than what the plain language would seem to suggest.
>
> MR. PEIFER: I understand, Your Honor. And I'm not suggesting that if they had identified a UL person to come here and say, that's not what our standard means, that you have to look in every piece with an artificial light, first from one

(continued...)

Plaintiffs initially argue that Defendant is precluded from advancing, and the Court precluded from adopting, this argument because Defendant failed to renew its Rule 50 motion within ten days after entry of judgment. That is the general rule. *U.S. Leather, Inc. v. H&W Partnership*, 60 F.3d 222 (5th Cir. 1995). However, in the present case, while they do not fully agree on the scope of its infirmities, all parties agree that the judgment that was entered is without legal justification in New Mexico law. When the "judgment" from which the ten-day time period under Rule 50 is calculated is legally insufficient, the ten-day period under Rule 50 does not begin until a proper judgment is filed. *Philhall Corp. v. United States*, 546 F.2d 210 (6th Cir. 1976); *Joyce v. Curtiss-Wright Corp.*, 179 F.R.D. 99 (W.D.N.Y. 1998). Moreover, since Plaintiffs raised the impropriety of the UPA recovery, the Court should be free to consider the appropriate application of the UPA. *See Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986). Finally, rather than considering Defendant's motion as an untimely renewal of its Rule 50 motions, most courts would consider it as a proper relief from judgment motion under Rule 60. *See, e.g., Carpenter v. Williams*, 86 F.3d 1015 (10th Cir. 1996); *Hatfield v. Board of County Comm'rs*, 52 F.3d 858 (10th Cir. 1995). The Court will

---

[4](...continued)
end to the other end, it doesn't mean that. But they haven't identified any such witness or offered any deposition testimony from anybody either.

Tr. 809-10.

therefore reject Plaintiffs' contention that it lacks jurisdiction to consider the appropriate UPA remedy.

The relevant testimony can be summarized as follows: The owner of the facility where Plaintiffs' work was to be done, Intel Corporation, required electrical components have a UL listing and Plaintiffs bought Allied Qwik Fit conduit in reliance on Defendant's advertising that Qwik Fit was UL listed. On both a routine and random basis, UL inspectors came to Defendant's various manufacturing facilities, including that where Qwik Fit was made, for inspections. Section 8.1 of UL standard 797 requires "<u>each length</u> of electrical metallic tubing shall be examined visually on both inside and outside on the interior and exterior surfaces ... (emphasis added)." Defendant's witnesses testified they generally run the manufacturing line to produce about 30 pieces of Qwik Fit tubing per minute and at no time does the operator inspect the inside of each piece of tubing. (Instead, they follow a procedure of randomly examining pieces from each run.) Is it, then, unfair or deceptive to advertise Qwik Fit is UL listed? New Mexico law suggests that it is not.

Defendant advertises its Qwik Fit conduit as UL listed. There is no question that if Qwik Fit was not approved by UL this would be a deceptive practice. *Niresk Indus., Inc. v. FTC*, 278 F.2d 337 (7th Cir. 1960); *Burndy Corp. v. Teledyne Indus., Inc.*, 584 F. Supp. 656 (D. Conn. 1984). In fact, however, UL has placed this product on their

approved list. The advertising is thus true and, therefore, logic dictates, not generally deceptive. *Waggener v. Seever Sys., Inc.*, 664 P.2d 813 (Kan. 1983).

The New Mexico UPA requires Defendant to knowingly make a false or misleading statement. *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1310 (N.M. 1991). Defendant's statement must also deceive or at lest tend to deceive. *Richardson Ford Sales, Inc. v. Johnson*, 676 P.2d 779 (N.M. App. 1984). Rejecting the contention that true advertising was deceptive in the context, the New Mexico Court of Appeals affirmed a directed verdict on a UPA claim in *Eckhardt v. Charter Hospital*, 953 P.2d 722 (N.M. App. 1997). The New Mexico Court initially recognized "that the advertisements were not false," 953 P.2d at 734, then concluded:

> Since Plaintiff failed to show that Charter's advertising was false or misleading in connection with the sale of its goods and services, she failed to establish a claim under the Unfair Practices Act. *See Ashlock*, 107 N.M. at 101, 753 P.2d at 347. Therefore, we affirm the trial court's decision to dismiss Plaintiff's claim for violation of the Unfair Practices Act.

953 P.2d at 736.

While the evidence may, then, have supported a claim for negligent misrepresentation, it was insufficient to support a UPA recovery. Since the UPA claim should not have been submitted to the jury and the verdict on this issue is without factual support, there is no basis to award attorneys' fees and expenses under the UPA. How to calculate expenses, attorneys' fees or the amount is thus moot. The Court has

not received the motion to tax costs or an appeal thereof, and assumes taxable costs have been resolved by the Clerk of Court in a fashion satisfactory to all parties.

### B. Interest

Plaintiffs argue the interest portion of the judgment should also be amended. Plaintiffs request prejudgment interest of ten percent from the date the complaint was served, August 13, 1997. Since federal jurisdiction arises from the diversity of the parties, the New Mexico Statute, § 56-8-4 NMSA 1978 (1993 Repl. Pamp.), applies to prejudgment interest. *Navajo Tribe v. Bank of New Mexico*, 700 F.2d 1285 (10th Cir. 1983). Section 56-8-4 provides "[t]he court in its discretion may allow interest up to ten percent from the date the complaint is served." While the decision is discretionary, the statute provides the following criteria as matters the Court can consider:

(1) If the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and

(2) If the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

Neither side makes any argument that the first factor is a relevant consideration in this case. However, Plaintiffs argue Defendant failed to make a "reasonable and timely offer of judgment." One of Plaintiffs' counsel, Charles Peifer, made a Declaration stating that until the eve of trial, Defendant's sole settlement offer was a joint settlement offer with Rome Cable, another Defendant, of $190,000.00. Defendant also never apparently responded to Plaintiffs' offer made during the summer of 1998.

13

Defendant also never made a separate settlement offer until the eve of trial, at which time it offered $300,000.00. Plaintiffs countered with yet another offer substantially less than the jury found Plaintiffs sustained in compensatory damages. In response to Plaintiffs' offer, Defendant stated that the parties were too far apart to continue negotiations.

Defendant has not disputed this scenario at either oral argument or in the briefing. The Court is also cognizant of the fact other Defendants were willing to go to arbitration. In spite of at least equivocal information from those people Defendant initially sent to investigate, however, Defendant consistently took a hard line on settlement negotiations. In deciding this issue, then, the Court will consider Defendant's failure to make a timely and reasonable offer. However, the statutory factors are not exclusive and the Court should consider all relevant factors. *Gonzales v. Surgidev Corp.*, 899 P.2d 576 (N.M. 1995). Even though in retrospect Defendant's settlement posture appears unreasonable, there is nothing in the record to suggest defense counsel obstructed the progress of the litigation or lacked a legitimate basis for their legal arguments. *Abeita v. Northern Rio Arriba Elec. Coop.*, 946 P.2d 1108 (N.M. App. 1997) (lack of unreasonable delay and difficult legal issues are legitimate considerations in evaluating prejudgment interest). In this regard, the Court notes Plaintiffs prevailed on only three of thirteen claims and one of the three was the UPA claim which should not have been submitted to the jury.

In the end, this is a close question with considerations pointing in both directions. On balance, however, having considered the above factors and the equities in general, the Court believes pretrial interest is not appropriate in the present case. *Id.; see also Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 868 P.2d 1307 (N.M. App. 1994).

## II. Defendant's Motions for New Trial

Defendant's *Motion for New Trial #1* alleges this Court erred in its jury instructions on both the UPA claim and the warranty claims. Based on the previous discussion, the UPA issue is moot.

Instructions 4 and 9 deal with the implied warranty of merchantability and are the primary focus of this motion by Defendant. As the comment by the Committee on Uniform Jury Instructions (Civil) states, "The elements of merchantability used in this instruction are those set out in the statute." Defendant, however, argues that the Uniform Jury Instructions approved by the New Mexico Supreme Court do not adequately track the language of New Mexico's version of the Uniform Commercial Code, specifically § 55-2-314 NMSA 1978 (1993 Repl. Pamp.). While it must be conceded the jury instruction, Uniform Jury Instruction ("UJI") 13-1430, is not a verbatim recitation of that provision of the Code, a full recitation of the statute would unnecessarily confuse the jury. The general philosophy of the UJI is stated in Chapter 15, Statutes and Ordinances:

15

> Certainly there can be no error in quoting the statute or ordinance verbatim. However, it may be better practice, particularly when the statute or ordinance is complicated, technical or drafted in language not readily understood by the jury, to paraphrase the particular statute or ordinance in question, in order to aid the jury in understanding the matters in issue.

"Whenever New Mexico Uniform Jury Instructions Civil contains an instruction applicable in the case and the trial court determines that the jury should be instructed on the subject, the UJI Civil shall be used unless under the facts or circumstances of the particular case the published UJI Civil is erroneous or otherwise improper and the trial court so finds and states of record its reason." NMRA 1-051(D). Therefore, while this Court does not find the UJI precisely quotes the UCC provision, the Court cannot say UJI 13-1430 is erroneous and, indeed, the instructions submitted by Defendant adopted the very language of the UJI Defendant would now attack. Once adopted, Defendant's tendered instruction language became the law of the case and cannot now be challenged. *United States v. Romero*, 136 F.3d 1268, 1271 (10th Cir. 1998); *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 667 (7th Cir. 1985).

In its *Motion for New Trial #2*, Defendant challenges the Court's rulings on the duties of Plaintiff as buyer to inspect Defendant's goods and locate the defects prior to use. The buyer's duty to inspect, both pre- and post-purchase, has been fully discussed in the Court's opinion denying Defendant's motion for summary judgment and nothing useful would be accomplished by relating that analysis in detail to the

individual jury instructions. The Court simply rejects Defendant's interpretation of a buyer's duty in this factual context.

Defendant's *Motion for New Trial #3* reiterates Defendant's arguments on the Court's failure to instruct the jury on comparative causation and/or comparative fault. Defendant did not tender jury instructions on either comparative causation or comparative fault. Rather, Defendant merely tendered a somewhat confusing verdict form which would have required the jury to compare the cause of the damages, without any real instruction on how or why this should be accomplished. Defendant's proposed verdict form (submitted for the first time on the day the jury was instructed) does not request that the jury compare "negligence." Rather, Defendant's proposed verdict form asks the jury to ascertain the damages Defendant caused and then to "compare the extent to which the fault [of other corporations] was a cause." Defendant's verdict form also fails to define the term "fault" or, in the alternative, contain a special interrogatory regarding a finding that Plaintiff breached a legal duty owed to Defendant or another party.

New Mexico recognizes comparative fault, not "comparative causation," as a defense to a tort claim. *See Martinez v. First Nat'l Bank of Santa Fe*, 755 P.2d 268 (N.M. App. 1987). Moreover, Defendant put on no evidence of causation deriving from Defendants which had settled prior to trial. *Id.* However, since the Court has ruled the UPA claim should not have gone to the jury, there would be no basis for a comparative

17

negligence verdict form in any event.[5] Finally even if the tort claim were properly before the jury, the form submitted by Defendant was inadequate. Defendant requested a finding as to the amount of damages caused by Defendant, instead of seeking a finding as to the total amount of damages for which the various entities, including Defendant, were legally responsible. Departing from both the language and theory of UJI 13-2220, Defendant's verdict seeks apportionment of the damage that Defendant caused. The jury verdict tendered by Defendant was thus not a fair reflection of New Mexico law and would have obscured the meaning of the jury's verdict. *Casarez v. Garcia*, 660 P.2d 598 (N.M. App. 1983) (verdict form should leave no question as to the clear intent of the jury).

## O R D E R

For the above stated reasons, Plaintiffs' motion to amend the judgment is **GRANTED** and Plaintiffs' petition for attorneys' fees is **DENIED**. Defendant's motions for new trial 1-3 are **DENIED**. Counsel for Plaintiffs should circulate an Amended Judgment reflecting these rulings within ten days of the entry of this opinion and order.

Dated at Albuquerque this 22nd day of July, 1999.

_____
BRUCE D. BLACK
United States District Judge

---

[5] Breach of warranty is recognized as sounding in contract under New Mexico law. *Camino Real Mobile Home Park Partnership v. Wolfe*, 891 P.2d 1190, 1196 (N.M. 1995).

Counsel for Plaintiff:

    Marshall G. Martin, Stephanie Landry, Margaret C. Ludewig, Hinkle Cox Eaton Coffield & Hensley, Albuquerque, NM

Counsel for Plaintiff-in-Intervention:

    Charles R. Peifer, Jennifer L. Olson, Browning & Peifer, Albuquerque, NM

Counsel for Defendant:

    Patrick S. Villella, Charles J. Noya, Villella Skarsgard & Noya, Albuquerque, NM
    Daniel R. Frost, Fairfield & Woods, Denver, CO
    Carl J. Butkus, Butkus & Reimer, Albuquerque, NM